HIRNING, Superintendent of Banks of South Dakota, et al. v. LIVE STOCK NAT. BANK.

(Circuit Court of Appeals, Eighth Circuit. August 4, 1924.)

No. 6444.

**I. Appeal and error ⬤⇒850(2)—Questions of fact held not reviewable, in absence of motion reserving same after trial of law case without jury.**

Where law case was tried without jury pursuant to stipulation waiving jury, and no motion was made by plaintiff for judgment in its favor on ground that evidence would not justify judgment against it, sufficiency of evidence to support judgment in defendant's favor and question whether uncontradicted evidence entitled plaintiff to judgment are not reviewable, under Rev. St. §§ 649, 700, 1011 (Comp. St. §§ 1587, 1668, 1672).

**2. Evidence ⟨⟩471(2)—Question as to disposition of proceeds of note held objectionable, as calling for conclusion.**

In action by bank against correspondent bank, question asked witness as to whether plaintiff bank received any part of proceeds of certain note *held* to call for a conclusion of witness, and properly excluded, in view of other evidence as to disposition actually made of such proceeds.

**3. Banks and banking ⟨⟩227(2)—Evidence tending to show who received proceeds of sale of notes held admissible in action between banks.**

In action by bank to recover of another bank, amounts charged against plaintiff's account for unpaid notes alleged by defendant to have been sold by plaintiff to defendant, evidence that plaintiff by checks and drafts drew proceeds of the note credited to it at the time of acquisition by defendant *held* admissible, as tending to show who received the benefit of such proceeds.

**4. Banks and banking ⟨⟩227(2) — Evidence held admissible on issue whether bank, purchasing note of another, knew its true owner.**

In action by bank, which claimed that it had been wrongfully charged by another bank with amount of unpaid notes alleged by defendant to have been sold it by plaintiff, evidence that defendant was never notified that plaintiff had credited others than itself with the proceeds of the note at the time of its acquisition by defendant *held* admissible on the issue whether defendant knew the note was not the property of plaintiff, but of others.

**5. Appeal and error ⟨⟩1052(7)—Banks and banking ⟨⟩227(2)—Proof of custom of dealing between banks held not erroneously admitted.**

In action by bank against another to recover amounts wrongfully charged to its account on notes alleged by defendant to have been purchased from plaintiff, proof of the custom or manner of doing business between the two banks *held* admissible on issue of collusion between plaintiff's president and defendant, and otherwise harmless, where judgment was not based on such existing custom.

**6. Banks and banking ⟨⟩227(2)—Evidence that parties to notes involved in action between banks were directors and stockholder of plaintiff held immaterial.**

In action by bank against another, which it was alleged had wrongfully charged plaintiff with the amount of unpaid notes alleged to have been bought from it, minutes of a stockholder's meeting of plaintiff bank, adduced for the purpose of showing that parties to the notes were directors, and one of them a large stockholder of plaintiff bank, *held* properly excluded as immaterial.

In Error to the District Court of the United States for the Northern District of Iowa; George C. Scott, Judge.

Action by John Hirning, as Superintendent of Banks for the State of South Dakota, and the Bon Homme County Bank, against the Live Stock National Bank. Judgment for defendant, and plaintiffs bring error. Affirmed.

E. E. Wagner, of Sioux City, Iowa (George J. Danforth, of Sioux Falls, S. D., and Robert B. Pike and Karl J. Knoepfler, both of Sioux City, Iowa, on the brief), for plaintiffs in error.

E. A. Burgess, of Sioux City, Iowa (F. E. Gill, of Sioux City, Iowa, on the brief), for defendant in error.

Before LEWIS, Circuit Judge, and BOOTH and SYMES, District Judges.

BOOTH, District Judge. In this action plaintiffs in error, hereafter called plaintiff bank, sought to recover from defendant in error, hereafter called defendant, the value of certain negotiable paper which plaintiff bank claimed to own, and which it further claimed had been converted by defendant.

The complaint, after setting out the incorporation and citizenship in South Dakota of the plaintiff bank, and the taking possession of the bank by the plaintiff superintendent of banks, and the citizenship of defendant in the state of Iowa, alleged further in substance as follows: That on December 4, 1919, one L. S. Taylor executed a promissory note for $12,500, payable to the order of P. D. Magnusson on June 4, 1920, with interest at the rate of 8 per cent. per annum; that on December 31, 1919, one Wenzloff and Magnusson indorsed and sold to the defendant said note; that at the same time Wenzloff sold to the defendant another note executed by one Wagner to Wenzloff in the sum of $6,318, which note was also indorsed by Magnusson; that defendant at the time was a regular correspondent of plaintiff bank; that, when said notes were sold and delivered to defendant, it entered upon its books the amount of the proceeds of the two notes to the credit of the account of plaintiff bank; that Wenzloff caused a portion of the proceeds of the sale of said notes to be placed to the credit of his account, and the balance to the credit of the account of Magnusson, upon the books of plaintiff bank; that they appropriated to their own use such credits; that plaintiff bank did not own or have any interest in said notes, and did not indorse the same, and received no part of the proceeds from the sale of the same; that about June 21, 1920, when said Taylor note was past due, defendant wrongfully and without authority, and acting collusively with Wenzloff, charged said Taylor note and other notes to the account of plaintiff bank on the books of defendant, and in so doing transferred from said account the sum of $12,905.27 as payment of the principal and interest of the said Taylor note; that the defendant thereby wrongfully appropriated to its own use the sum of $12,905.27 of the property and as-

sets of plaintiff bank, which it has at all times refused to return; that, when defendant charged said sum of $12,905.27 to the account of the plaintiff bank in payment of the Taylor note, it knew that plaintiff bank was not in any manner obligated for the payment of said note, knew that it was appropriating the funds of plaintiff bank to the payment of the personal obligation of Wenzloff, and that at the time plaintiff bank was insolvent. The complaint further alleged that the capital and surplus of plaintiff bank did not exceed $35,000; that under the laws of the state of South Dakota it was forbidden to loan or extend credit to or purchase, own, or indorse the paper of any one person in any sum in excess of 20 per cent. of its capital and surplus; and that Taylor was, at all times mentioned in the complaint, indebted to said bank in a sum equal to 20 per cent. of its capital and surplus.

The defendant's answer admitted the jurisdictional facts, denied generally the other allegations of the complaint, and further alleged in substance: That all of the transac· tions with respect to the Taylor note were had directly with plaintiff bank through its officers Wenzloff, president, Reich, cashier, and Pfeifer, assistant cashier; that defendant purchased said note from plaintiff bank, paying said bank the sum of $12,500 therefor, and, acting under instructions of plaintiff bank, credited the account which it carried with defendant with the full proceeds of said note; that defendant had no knowledge or notice that Wenzloff either had or claimed to have any interest in said note or in the proceeds thereof; that plaintiff bank at all times during the transaction held itself out to be the owner of said note, sold the same as its own note, and took credit for, and itself used, the proceeds thereof; that defendant in purchasing said note had no knowledge or notice of any defect in the title of plaintiff bank thereto, and acted in good faith and relied upon the belief that the plaintiff bank owned said note; that on or about June 21, 1920, plaintiff bank paid defendant the full amount due on said Taylor note, and defendant thereupon surrendered said uncanceled note to plaintiff bank; that defendant on said date held said Taylor note and two other notes which it had purchased from plaintiff bank, all of which were then past due and which aggregated the sum of $29,530.19; that plaintiff bank on said date sold to and rediscounted with defendant certain other bills receivable, for which defendant paid plaintiff bank the sum

of $29,828.20; that plaintiff bank used $29,530.19 of the proceeds realized from the sale of said bills receivable in paying said Taylor note and the two other past-due notes, and took credit on the account which it carried with defendant for the balance, to wit, $298.01; that plaintiff bank orally instructed defendant to charge its account with the amount due on the Taylor note and the two other past-due notes, and to credit its account with $29,828.20, the proceeds realized from the sale of said bills receivable, and to transmit to it the three notes so paid, including the Taylor note; that the bills receivable so purchased from plaintiff bank by defendant on June 21, 1920, have all been fully paid, and said entire transaction was fully closed before the commencement of the present suit; that plaintiff bank is estopped to deny the ownership of the Taylor note and sale thereof to defendant, or to question said transaction, for the reason that said plaintiff bank directed the proceeds of said note to be credited to its own account on the books of defendant, was informed that such credit had been given, made no objection thereto, and accepted and used such credit for its own purposes, and voluntarily repurchased said Taylor note; that it was the custom and usage of doing business between said banks for plaintiff bank to sell to and rediscount with the defendant bills and notes, some of which were sold under indorsement of plaintiff bank, and others without such indorsement, and that at maturity of said paper so sold and discounted, where the same was unpaid, for defendant to charge the account of plaintiff bank with the amount due upon such past-due paper; that in the instant case plaintiff bank did not have on deposit with defendant sufficient funds to enable the latter to charge the account of plaintiff bank with said Taylor note, and in lieu thereof the parties arranged to handle the transaction as above set forth; that all of the officers of plaintiff bank knew that defendant had purchased the Taylor note and paid the full par value therefor, and had credited the account of plaintiff bank with the full amount of the proceeds thereof; that said officers were fully acquainted with the manner in which the Taylor note was taken up by plaintiff bank at maturity, and at all times acquiesced therein and made no objection thereto.

With issues thus formed, the case was tried to the court without a jury, a jury having been duly waived in writing, filed with the clerk. Judgment was entered for defendant, dismissing the action and ordering costs against plaintiffs. No special findings were

made, and there was no request for findings or for any declaration of law. No motion for judgment in favor of plaintiff bank was made on the ground that the evidence would not justify a judgment against it.

[1] When a law case is tried to the court without a jury, stipulation waiving a jury having been filed with the clerk, the questions which are open for review in the appellate court are determined by statute. R. S. § 649 (C. S. § 1587), section 700 (C. S. § 1668), and section 1011 (C. S. § 1672). These statutes have been construed many times by this court, and the proper method has been outlined for bringing before the appellate court such questions as are open for review. The latest expression of opinion by this court on the subject is found in the case of Highway Trailer Co. v. Des Moines, 298 Fed. 71. The court in its opinion said (quoting from Wear v. Imperial Co., 224 Fed. 60, 139 C. C. A. 622):

"When an action at law is tried without a jury by a federal court, and it makes a general finding, or a special finding of facts, the act of Congress forbids a reversal by the appellate court of that finding, or the judgment thereon, 'for any error of fact' (Revised Statutes, § 1011 [U. S. Comp. Stat. 1913, § 1672, p. 700]), and a finding of fact contrary to the weight of the evidence is an error of fact. The question of law whether or not there was any substantial evidence to sustain any such finding is reviewable, as in a trial by jury, only when a request or a motion is made, denied, and excepted to, or some other like action is taken which fairly presents that question to the trial court and secures its ruling thereon during the trial."

Of the numerous cases on the same subject, the following may be cited as bearing closely on the instant case: U. S. v. A., T. & S. F. Ry. (C. C. A.) 270 Fed. 1; Mason v. U. S., 219 Fed. 547, 135 C. C. A. 315; Union Pacific v. Laughlin, 245 Fed. 544, 157 C. C. A. 656; McClay v. Fleming (C. C. A.) 271 Fed. 472; Stoffregen v. Moore (C. C. A.) 271 Fed. 680; Gartner v. Hays (C. C. A.) 272 Fed. 896; Pennok Co. v. Roxana Co. (C. C. A.) 289 Fed. 416.

Eight assignments of error are set out in the instant case. The eighth challenges the entry of judgment in favor of defendant on eight different grounds, which may be reduced to two: First, that the evidence was insufficient to support a judgment in defendant's favor; second, that on the uncontradicted evidence, judgment should have been entered for plaintiff. In view of the authorities above cited, none of the questions raised by this eighth assignment can be passed upon by this court, for the reason that they are not properly before it upon the record. We pass to the assignments of error relating to rulings admitting or rejecting evidence and to which rulings exceptions were taken upon the trial.

[2] Assignment 1 relates to alleged error in sustaining an objection to a question put to the witness Reich "whether the plaintiff bank received any part of the proceeds of the Taylor note." The question called for a conclusion rather than for facts, and inasmuch as evidence as to all of the facts in regard to the transaction, including what was actually done with the proceeds, was allowed to be introduced, there was no error in excluding the question.

[3, 4] Assignment 2 challenges the admission of evidence showing that the credit balance in defendant bank created by the proceeds of the Taylor note was all drawn out by plaintiff bank by checks and drafts. This evidence was admissible as showing who received the benefit of the proceeds of the note. Objection was also made to the admission of evidence that the plaintiff bank never notified defendant of the credits placed upon the books of plaintiff bank in favor of Magnusson and Wenzloff, covering the amount of the proceeds of the Taylor note. When this evidence was offered there had already been introduced by plaintiff bank evidence that it had made such entries of credits on its books. If that evidence was material, then it was also material to show whether the defendant had any notice or knowledge of such entries as bearing upon the issue whether defendant knew that the Taylor note was the property of Wenzloff and not of plaintiff bank.

[5] Assignments 3, 5, and 6 relate to the admission of evidence of the custom or manner of doing business between the two banks, in respect to the handling of notes sold or rediscounted and remaining unpaid at maturity. Even if there was error in admitting the evidence of custom, it was harmless, inasmuch as the opinion of the trial court shows that the judgment was not based on the ground of custom existing between the banks. Pennok Co. v. Roxana Co. (C. C. A.) 289 Fed. 416. But, even if the court's decision had been based in part upon the existence of the custom shown by the evidence, nevertheless there was no error. The evidence was not offered to contradict any rule of law, nor did it tend so to do. It was admissible on the issue of collusion between Wenzloff and defendant, as

tending to show that there was nothing so unusual in the way in which the Taylor note was handled as to indicate bad faith on the part of defendant—nothing so unusual as to indicate that the plaintiff bank was disposing of its assets in any other way than in the usual course of business.

Assignment 4 relates to alleged error in admitting evidence to the effect that defendant knew nothing of the credits which plaintiff bank placed on its books in favor of Magnusson and Wenzloff after the Taylor note was transferred to defendant, and had no knowledge or notice that the Taylor note was owned by Wenzloff instead of by plaintiff bank. This evidence was admissible on the issue of good faith on the part of defendant, both in the purchase of the note and in selling it back to plaintiff bank after maturity.

[6] Assignment 7 relates to alleged error in refusing to admit in evidence the minutes of a stockholder's meeting of plaintiff bank for the purpose of showing that Magnusson and Wenzloff were directors and that Wenzloff was a large stockholder. We fail to see the materiality of the proposed evidence upon any issue raised by the pleadings, and conclude that there was no error in the ruling.

In view of the foregoing, it becomes unnecessary to discuss several of the legal propositions argued by counsel for plaintiff bank. Those propositions as applied to the instant case rest upon an assumption of facts: That plaintiff bank received none of the proceeds of the Taylor note, that defendant knew that the Taylor note was the property of Wenzloff, and that, when said note was taken up by plaintiff bank, defendant knowingly received property of plaintiff bank in payment of Wenzloff's personal debt. But these assumed facts are all negatived by the judgment of the court below, and, as above stated, plaintiffs in error are not in a position here to question the facts upon which the judgment rests.

The judgment is affirmed.