## SIMPSON–FELL OIL CO. et al. v. PIERCE PETROLEUM CORPORATION.

Circuit Court of Appeals, Eighth Circuit. April 9, 1929.

No. 8378.

C. B. Stuart, of Oklahoma City, Okl. (W. D. Potter, of Ardmore, Okl., and M. K. Cruce, of Oklahoma City, Okl., on the brief), for appellants.

Henry G. Snyder, of Oklahoma City, Okl., and R. A. Kleinschmidt, of Tulsa, Okl. (Kleinschmidt & Johnson, of Tulsa, Okl., and Synder, Owen & Lybrand, of Oklahoma City, Okl., on the brief), for appellee.

Before LEWIS and VAN VALKEN-BURGH, Circuit Judges, and SYMES, District Judge.

VAN VALKENBURGH, Circuit Judge. Appellants, plaintiffs below, seek to recover damages for breach of contract. Originally four cases at law were filed in the District Court of the United States for the Western District of Oklahoma, numbered respectively 3508, 3509, 3510, and 3511. The pleadings in these cases are conceded to be identical, except as to the names of the plaintiffs and the interest of the parties in the various properties involved. The cases were consolidated for trial, and submitted to the court upon one set of facts, under a waiver of jury in writing. The cases come to this court on a single transcript, it being stipulated "that but one appeal be prosecuted regarding said consolidated cases, and that all considerations, orders, judgments, and mandates made by the Eighth Circuit Court of Appeals, or the United States Supreme Court, in case appeal is finally taken to that court, be effective in each of the individual cases above described, the same as if an appeal had been taken in each of said cases individually." It will be necessary, therefore, to consider the pleadings in but one as typical of all of these cases.

The alleged contract, the asserted breach of which is the foundation of this controversy, is in the words and figures following:

"Exhibit A.

"Division Agreement.

"This agreement made and entered into on this 6th day of March, 1925, by and between the Simpson-Fell Oil Company, of Ardmore, Oklahoma, W. T. Hales, of Oklahoma City, Oklahoma, and C. O. Gregg, of

Los Angeles, California, of the first part, E. A. Walker, of Oklahoma City, Oklahoma, of the second part, and the Pierce Petroleum Corporation, a corporation duly authorized to conduct business in Oklahoma, of the third part, witnesseth as follows, to wit:

"1. The parties of the first part as lessees, and party of the second part as lessor and fee owner of the SW¼ of the NW¼ of section 10, township 4 south, range 2 west, Carter county, Oklahoma, agrees to sell their respective interest in the oil produced from the said land to the said third party for a term of one year, beginning March 15, 1925, and ending March 15, 1926; the respective interest of the said parties in said oil being as follows:

"Simpson-Fell Oil Company, Box 778, Ardmore, Oklahoma, ⅝ of ⅝ working interest.

"W. T. Hales, First National Bank Building, Oklahoma City, Oklahoma, ¼ of the ⅝ working interest.

"C. O. Gregg, ℅ Simpson-Ashby Company, Second and Santa Fé Ave., Los Angeles, Calif., ⅛ of the ⅝ working interest.

"E. A. Walker, ℅ Tradesmen's National Bank of Oklahoma City, Oklahoma, ⅜ of the total production as royalty interest.

"2. It is agreed that the said third party is hereby authorized to connect with any of the wells now on the above-described land and any wells drilled on it during the term of this contract and receive all merchantable oil produced therefrom during the continuance of this contract; said first and second parties to be paid for said oil according to the respective interests as set out in the preceding paragraph, the same to be received and purchased from said parties severally in the proportions named. It being understood that the oil thereunder shall become the property of the Pierce Petroleum Corporation and title to the same shall pass to it as soon as received into its possession.

"3. The said third party hereby agrees and binds itself to take all the oil produced from said land during said term and furnish all connections, lines and power necessary to do so at its own expense and to pay therefor to the first and second parties or their assigns in proportion to their respective interest as set out before and upon the basis of oil run and purchased by the Prairie Oil & Gas Company for a like grade or grades of crude oil in the Mid-Continent field, plus a premium of twenty-five cents per barrel above the posted price paid by the Prairie Oil & Gas Company for a like grade or grades of Mid-Continent crude oil during the term of this contract. In case the Prairie Oil & Gas Company or its successors should discontinue posting a price for Mid-Continent crude oil the parties of the first and second part may select any major purchasing company whose posted price shall be used as a basis for the balance of the term of the contract. Settlement for said oil to be made semimonthly. For the amount due on account of oil received during the first fifteen days of each calendar month payment shall be made on or before the 25th day of such month and for the amount due on account of oil received after the 15th day of any calendar month payment shall be made on or before the 10th day of the next succeeding month and failure to make such payments as provided shall give the first and second parties the option of terminating this contract but this shall not in any way relieve the third party from its full obligations under this contract. These payments may be made by paying the party or parties from whom such oil is purchased, their heirs, assigns or legal representatives in person or by mailing a check therefor to such person or persons, their heirs, assigns or legal representatives at the address of such parties as set out hereinbefore.

"4. The Pierce Petroleum Corporation shall be permitted to deduct three per cent. from all oil received from the wells into the pipe lines for its account, on account of dirt and sediment; and in addition shall deduct one per cent. for each degree of artificial heat above normal temperature occasioned by the producers of said lease applying heat or steam to the oil, but the said producers shall be permitted to cool said oil before running it to the pipe lines if they so desire.

"5. The first and second parties severally agree to notify the Pierce Petroleum Corporation of any change in ownership, it being understood that any vendee or assignee of said wells or the production thereof shall take the same subject to the terms hereof.

"6. It is understood and agreed that in case of adverse claim of title to the land from which any such oil may be produced or adverse claim of title to any oil sold and purchased in pursuance of this division agreement the Pierce Petroleum Corporation may retain the purchase price of such oil until such diverse claim is fully settled and determined or until the party or parties claiming to be the owners thereof shall furnish satisfactory indemnity against such adverse claim or claims and the sellers hereby agree to indemnify and hold said Pierce Petroleum Corporation harmless against any claim which may be asserted or any action which

may be brought on account of any oil taken under the terms hereof.

"In testimony hereof, witnesseth our hands in triplicate this the day and year first above written. Simpson-Fell Oil Company, by H. B. Fell, President. Attest: W. D. Potter, Secretary. [Seal] W. T. Hales, by ———, Parties of First Part. E. A. Walker, Party of the Second Part. Pierce Petroleum Corporation, by ———, President, Party of the Third Part. Attest: ———, Secretary."

It is alleged in the petition that on the said 6th day of March, 1925, plaintiffs consummated a contract of sale and purchase with the defendant, Pierce Petroleum Corporation, acting by its Oklahoma manager, R. P. Kistler, its duly authorized agent and representative; that under the terms and conditions of said contract the defendant did, on the 15th day of March, 1925, cause all other pipe lines to disconnect from the property described, and made its connections with all of the wells on said property, furnishing all connections, lines, and power at its expense, and did receive said oil, as provided in said agreement, and paid for the same, as therein provided, from the 15th day of March, 1925, until about the 11th day of June, 1925; that on the latter date the defendant, Pierce Petroleum Corporation, disconnected its pipe line from the tank and wells of the plaintiffs, and refused further to comply with the terms and conditions of said agreement. It is further alleged that, after June 11, 1925, the time when the alleged breach occurred, the demand for oil was not so strong; that plaintiffs were compelled to store their oil for a time; and that, after the most diligent effort on their part, the contract they were able to make for the balance of the period of said alleged contract was for a price of 15 cents per barrel above the posted price of the Prairie Oil & Gas Company for similar grades of Mid-Continent crude oil—a loss under the terms of said agreement of 10 cents per barrel. The number of barrels produced from the same propery thereafter, from June 11, 1925, to March 15, 1926, is stated, and damages are prayed accordingly for this period.

By their answer, under oath, the Pierce Petroleum Corporation denied that any binding contract was made between the parties, and stated that the said R. P. Kistler had neither right nor authority to make the same. It was further alleged that the plaintiffs and Kistler agreed upon the terms of a tentative contract for the sale of oil from the property described in the petition, but that such contract was subject to the approval of the president of the company, was put in writing and submitted to the president for his approval, and for the signature of the proper officers of the company, if so approved; that such approval was refused, unless certain amendments were made; that the contract was returned to the plaintiffs unsigned, advising them of the alterations and amendments suggested; that, pending the approval and signature of said contract, oil produced from the premises was run and furnished to the defendant, upon what is known as an open division order, that is to say, upon a day to day basis only, with the right to cease purchasing at any time; that the plaintiffs were so advised, and furnished oil accordingly, for all of which payment has been made. It is further alleged that the plaintiffs declined to make the alterations or amendments suggested, and that the contract was therefore never executed by the defendant.

It is conceded by appellants in brief and argument that on or about the 15th day of April, a representative of the Pierce Corporation advised the plaintiffs that the division agreement as drawn was unsatisfactory, upon the ground that it based the price to be paid by the Pierce Corporation upon the price posted by the Prairie Oil & Gas Company in the Mid-Continent field, demanding that this should be changed to read, "the price posted by the Prairie Oil Company in the Hewitt field," and further that on May 5th the copies of this division agreement were returned to plaintiffs, because not drawn to the satisfaction of the president of the Pierce Corporation. The letter of transmittal contained this paragraph:

"Unless certain alterations can be made, it will be necessary for us to operate on open division orders. In the meantime, we will continue running the oil and paying for same on open division order basis, and not on the contract."

The contract was never signed by the Pierce Corporation, nor by any one authorized to represent it.

At the close of the testimony the defendant moved the court for judgment in its favor, and after consideration of arguments and briefs the court made the following findings of fact and conclusions of law:

### "Findings of Fact.

"1. The terms of the contracts, otherwise called division agreements, dated March 6, 1925, attached to plaintiffs' petition, were agreed to on March 6, 1925, by Mr. Fell and

Mr. Hales on behalf of the plaintiffs and were adopted by the other plaintiffs, and Mr. Kistler who, in the negotiations looking to the entrance into the contract acted on behalf of the defendant, fully assented thereto.

"2. Mr. Kistler, who represented the defendant in such negotiations, did not sign the division agreements, though he did agree to the terms thereof, and at the instance of the plaintiffs sent the division agreements to the defendant's New York office for formal execution. Such agreements were not formally executed by defendant.

"3. Negotiations conducted by Mr. Kistler were conducted by him alone on behalf of the defendant. The plaintiffs have not sustained the burden resting upon them of showing the authority of Mr. Kistler. To the contrary, the testimony of Mr. Pierce, president of defendant corporation, is undisputed, and is not denied, and it is accordingly found that in fact Mr. Kistler had no authority to make the contracts here in question as the agent of defendant.

"4. In fact no contract exists between plaintiffs and the defendant, and the division agreements attached to plaintiffs' respective petitions never became effective or binding upon the defendant.

"5. The testimony is undisputed to the effect that the division agreements were executed by the plaintiffs on the 6th day of March, 1925, and that these division agreements provided that on March 15th the defendant should connect up its lines with the wells of the plaintiffs and take the oil.

"6. The testimony is further undisputed that the defendant did connect up its lines with all the producing properties described in the division agreements, and that the defendant continued to take all the production therefrom up to about the 10th day of June, 1925, and that the defendant paid therefor a 25 per cent. premium, as provided in said division orders and the court so finds.

"7. The evidence is undisputed that there was a greater demand to purchase oil in the vicinity where plaintiffs' wells are located on March 6, 1925, than on June 11, 1925, and such evidence is accepted as true by the court.

"Conclusions of Law.

"In the premises, the court concludes as a matter of law as follows:

"1. No legal enforceable contract exists between the plaintiffs and the defendant.

"2. No note or memorandum in writing, subscribed by the defendant, the party sought to be charged, or by its agent, exists between the parties to the respective actions.

"3. The contracts alleged in plaintiffs' respective petitions are invalid, under the first subdivision of the Oklahoma statute of frauds, being section 5034, Oklahoma Compiled Statutes 1921.

"4. The contracts alleged in plaintiffs' respective petitions are invalid under the Oklahoma statute of frauds, being section 5034, Oklahoma Compiled Statutes 1921; for that, assuming the correctness of the plaintiffs' claim (which the court does not sustain) that the defendant accepted and paid for the oil upon the terms of the so-called division agreements, the acceptance and part performance would not take the case out of the operation of the statute, where, as is here found, a contract did not exist between the parties.

"5. Plaintiffs' contention, based upon alleged acquiescence in the contract, is denied.

"6. The respective plaintiffs are not entitled to any relief herein, and the defendant is entitled in each case to judgment for its costs, same to be taxed to the respective plaintiffs.

"7. The court finds, as a matter of law, that if the division agreements were executed by the plaintiffs and delivered to the defendant, and thereafter the plaintiffs disconnected their wells from other pipe line companies, and the defendant went upon the plaintiffs' property, connected its lines with plaintiffs' wells, and took and paid for the production therefrom at a premium of 25 cents per barrel, as provided in the division orders, and continued to take and pay for the same as therein provided up to June 11, 1925, that said act did not remove the application from the first subdivision of the statute of frauds, and that the defendant had the right to plead said statute, notwithstanding that it had taken possession of plaintiffs' property, in so far as it is necessary to take the oil, and made its connections and took the oil for a period of nearly three months.

"8. The court further concludes that, as a matter of law, the defendant had the right to hold the contracts or division agreements, which were executed and binding on the plaintiffs from March 9, 1925, up until May 5, 1925, without the agreement becoming binding on it, notwithstanding it had gone into possession of the property, taken the oil, and paid for it at the price provided in said agreements.

"9. The court further holds, as a matter of law, that the plaintiff cannot claim in a law action such as this that the acts of the defendant claimed by the plaintiffs to be a partial performance of the contracts would take it out of the statute of frauds, and the

plaintiffs cannot plead an equitable estoppel against the defendant claiming the benefit of the statute of frauds, because this is an action at law.

"10. The court holds as a matter of law that it is necessary to show the authority of the agent, Kistler, an employee of the defendant, to make this contract, and the fact that, after the plaintiffs executed the proposed contract and delivered it to Kistler, the defendant, as provided in said contract, connected up its lines, took the oil, and paid the same premium as provided in said proposed contract for a period of about 85 days.

"To each of such findings of fact and conclusions of law the plaintiffs in such respective actions except, and such exceptions are allowed."

■ Judgments followed in favor of defendant in all four cases. No requests for findings of fact or declarations of law were made by appellants. In this state of the record our review is limited to an ascertainment of whether the facts found support the judgment. Section 700, R. S. U. S.; USCA title 28, § 875; Fleischmann Const. Co. v. United States, 270 U. S. 349, 355, 46 S. Ct. 284, 70 L. Ed. 624; Newlands v. Calaveras Mining & Milling Co. (C. C. A. 8) 28 F.(2d) 89.

■ We cannot weigh the evidence, and the question of whether the findings of fact are supported by the evidence is not open. United States Fidelity & Guaranty Co. v. Board of Com'rs of Woodson County, Kan. (C. C. A. 8) 145 F. 144; Wear v. Imperial Window Glass Co. (C. C. A. 8) 224 F. 60; Pennok Oil Co. v. Roxana Petroleum Co. (C. C. A. 8) 289 F. 416; McClay v. Flemming (C. C. A. 8) 271 F. 472; Stoffregen v. Moore (C. C. A. 8) 271 F. 680; United States v. A., T. & S. F. R. Co. (C. C. A. 8) 270 F. 1; Allen v. Cartan & Jeffrey Co. (C. C. A. 8) 7 F.(2d) 21, 22; Hirning v. Bank (C. C. A. 8) 1 F.(2d) 307; Highway Trailer Co. v. City of Des Moines (C. C. A. 8) 298 F. 71; Denver Live Stock Commission Co. v. Lee (C. C. A. 8) 20 F.(2d) 531.

Examination establishes the fact that the findings made support the judgment. The statute of frauds of the state of Oklahoma reads as follows:

"The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent:

"First. An agreement that, by its terms, is not to be performed within a year from the making thereof. * * *

"Third. An agreement made upon consideration of marriage, other than a mutual promise to marry.

"Fourth. An agreement for the sale of goods, chattels, or things, in action, at a price not less than fifty dollars, unless the buyer accept or receive part of such goods and chattels, or the evidences or some of them, of such things in action, or pay at the same time some part of the purchase money; but when a sale is made by auction, an entry by the auctioneer in his sale book, at the time of the sale, of the kind of property sold, the terms of sale, the price and the names of the purchaser and person on whose account the sale was made, is a sufficient memorandum.

"Fifth. An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein; and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged."

Compiled Statutes Oklahoma 1921, § 5034.

■ The alleged agreement by its terms was made March 6, 1925, and was not to be fully performed until March 15, 1926. It falls, therefore, within the first subdivision of the statute. The court found that the alleged contract was not signed by the Pierce Petroleum Corporation nor by its agent; that at the instance of plaintiffs it was sent to the New York office for execution; that, therefore, the divisions agreement never became binding upon appellee.

■ Counsel for appellants freely concede that the contract was not signed, as required by the first subdivision of the statute, and that it is not taken out of the statute by part performance, but contend that, by accepting oil and paying for it on the terms specified in the divisions agreement, appellee ratified the contract; that this alleged ratification took effect March 15th, on which date oil began to be accepted by appellee; that the contract was thus one to be performed within a year, and, therefore, not subject to the bar of the statute of frauds. This contention, if indulged, would rob that statute, in large measure, of effective force, and would open the door to the very evils which it was enacted to prevent. The court finds that there was in effect no contract to be ratified by conduct; that the acceptance of oil, and payment at the price fixed, pending consummation of the tentative agreement, would not operate to take that agreement out of the statute, and to bind the defendant. The argument made by counsel for appellants must as-

sume that another and different contract was entered into by the acceptance of oil on March 15th and thereafter; otherwise, the agreement of March 6th is validated by indirection, and in obvious conflict with the express terms of the statute; but this position is rendered untenable by the petition itself. By its allegations the contract sued on is the contract of March 6, 1925. The pleader says:

"On or about the 6th day of March, 1925, these plaintiffs * * * consummated a contract of sale and purchase with the Pierce Petroleum Corporation. * * * Plaintiffs further allege that as a memorial of the contract and agreement, they, and each of them executed a written division agreement embodying the terms and conditions of said contract of sale and purchase above referred to, and after the plaintiffs had executed said division agreement the same was delivered to, and accepted by, the Pierce Petroleum Corporation; that the division agreement was in all things accepted and acquiesced in by the defendant herein, who held the same and assented to its terms and acted thereon by making its connections as therein provided, by taking all of said oil as therein provided, by paying for the same as therein provided and set forth, and in every way performing said contract as therein provided until the 10th day of June, 1925, that no objection or objections, was or were, made to said agreement, held it and acted upon it as a valid instrument, and not until just prior to the breach of said contract by the defendant herein. A copy of said division agreement is hereto attached, marked Exhibit A and made a part hereof."

In their brief appellants say:

"Therefore, we unhesitatingly assert that under any theory of the case, this contract was both made on March 6, 1925, by Kistler, the duly authorized agent, and it was re-adopted, and its terms agreed to by the parties, on March 15, 1925, when they connected to the wells and commenced running the oil under its provisions, and paying for it under the specific terms of the contract."

The case was tried upon that theory.

It will thus be seen that the petition declares upon this specific contract of March 6, 1925, a contract by its terms "not to be performed within a year from the making thereof," and not subject to validation by part performance. Browne on Statute of Frauds (25th Ed.) § 272, p. 359; Pomeroy on Contracts (2d Ed.) p. 141; Chitty on Contracts (11th Ed.) p. 99.

The courts with substantial unanimity support the text-writers in this regard. Furthermore, the doctrine of part performance by the buyer, to take a contract out of the statute of frauds, obtains only in equity. Franklin v. Matoa Gold Mining Co. (C. C. A. 8) 158 F. 941, 16 L. R. A. (N. S.) 381, 14 Ann. Cas. 302; Pomeroy on Contracts (2d Ed.) §§ 98, 99, p. 139. And this is an action at law.

Finding no error in the application of the law to the facts found, we conclude that the judgment below in all four cases should be affirmed; and it is so ordered.